ROBBINS GELLER RUDMAN
& DOWD LLP
DARREN J. ROBBINS (168593)
DAVID C. WALTON (167268)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
davew@rgrdlaw.com

CHAPIN FITZGERALD SULLIVAN
& BOTTINI LLP
FRANCIS A. BOTTINI (175783)
550 West C Street, Suite 2000
San Diego, CA 92101
Telephone: 619/241-4810
619/955-5318 (fax)
fbottini@cfsblaw.com

Attorneys for Plaintiff

FILED
12 MAY 31 PM 1:17
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ERICH BRACHT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>DECKERS OUTDOOR CORPORATION, ANGEL R. MARTINEZ, THOMAS A. GEORGE and ZOHAR ZIV,<br><br>Defendants. | VIA FAX<br>No. CV12-04768 R(CWx)<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>DEMAND FOR JURY TRIAL |

## JURISDICTION AND VENUE

1. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 (17 C.F.R. §240.10b-5) promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC").

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act (15 U.S.C. §78aa).

3. Venue is proper in this District pursuant to §27 of the 1934 Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

4. Deckers Outdoor Corporation ("Deckers" or the "Company") maintains its principal executive offices at 495A South Fairview Avenue, Goleta, California 93117. Certain of the acts and conduct complained of herein, including dissemination of materially false and misleading information to the investing public, occurred in this District.

5. In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## INTRODUCTION

6. This is a securities class action on behalf of all persons who purchased or otherwise acquired Deckers common stock between October 27, 2011 and April 26, 2012, inclusive (the "Class Period"), against Deckers and certain of its officers and/or directors for violations of the 1934 Act. These claims are asserted against Deckers and certain of its officers and/or directors who made materially false and misleading statements during the Class Period in press releases, analyst conference calls, and filings with the SEC.

7. Deckers is a designer, producer, marketer, and brand manager of footwear, apparel and accessories. The Company markets its products primarily under three brands: (1) UGG, a luxury comfort brand; (2) Teva, an outdoor performance and lifestyle brand; and (3) Sanuk, an action sport footwear brand. In addition to Deckers' three primary brands, the Company's other brands include: TSUBO, Ahnu, MOZO and Simple. The Company has 45 retail stores worldwide.

8. During the Class Period, defendants issued materially false and misleading statements concerning the Company's financial condition and future business prospects. More specifically, defendants misrepresented and omitted material facts concerning demand for its critical UGG brand. The Company's UGG brand is critical to its success. During the Class Period, however, the Company's expansion and extensive distribution created a unique circumstance: UGG supply met demand for the first time. As new product lines faltered and the Company continued raising prices on its "classic" UGG products, inventories swelled to extremely high levels, requiring the Company and its retailers to use previously unheard of mark-down and close-out pricing to move UGG products.

9. As a result of defendants' false statements, which hid these adverse trends from the market, the price of Deckers common stock traded at artificially inflated prices during the Class Period, reaching a high of $117.66 per share on October 28, 2011.

10. On February 23, 2012, the Company announced its full-year and fourth quarter 2012 financial results. Although the Company reported better-than-expected fourth quarter results, inventory levels had increased 100% and Deckers issued 2012 guidance of 15% sales growth over 2011 levels, and stated that it "expects full-year diluted EPS to be approximately flat with 2011 levels." As a result, the price of Deckers common stock dropped $12.49 per share, or 13.9%, to close at $77.72 per share on February 24, 2012.

11. Then on April 26, 2012, after the market closed, the Company announced that it missed its second quarter 2012 earnings and lowered its full-year 2012 guidance. Deckers now projects 2012 diluted earnings per share ("EPS") will decrease by 9%-10%, compared to previous guidance for diluted EPS to be flat year-over-year.

12. On this news, Deckers common stock dropped quickly, falling $17.63 per share to close at $51.83 per share on April 27, 2012, a one-day decline of more than 25%, on volume of more than 14 million shares traded.

13. The true facts, which were known by defendants but concealed from the investing public during the Class Period, were as follows:

(a) the Company was not able to mitigate the effects of dramatically increasing prices for sheepskin;

(b) the Company was seeing a decline in demand to a much larger extent than represented due to the unusually warm weather;

(c) the Company's extensive expansion resulted in the over-supply of UGG products, especially its classic products, meeting and/or exceeding demand, which meant that the Company's price increases for those products were ineffective;

(d) the Company's inventory levels for its UGG brand were increasing rapidly, which led to the increased use of mark-downs and close-outs as the Company experienced declining same store sales and its new retail stores also suffered;

(e) as a result of the foregoing, the Company's gross margin was negatively impacted; and

(f) based on the above, defendants lacked a reasonable basis for their positive statements about the Company or its revenue outlook.

14. As a result of defendants' false statements, Deckers common stock traded at artificially inflated levels during the Class Period. When defendants revealed Deckers' true financial condition and future business prospects, the price of Deckers common stock fell nearly 56% from its Class Period high.

## PARTIES

15. Plaintiff Erich Bracht purchased Deckers common stock as described in the attached certification and was damaged thereby.

16. As stated above, defendant Deckers designs, produces, markets, and is a brand manager for footwear, apparel and accessories.

17. Defendant Angel R. Martinez ("Martinez") is, and at all relevant times was, Chairman of the Board, President, and Chief Executive Officer ("CEO") of Deckers. During the Class Period, defendant Martinez sold 33,005 shares of his Deckers stock for proceeds of nearly $3.5 million.

18. Defendant Thomas A. George ("George") is, and at all relevant times was, Chief Financial Officer ("CFO") of Deckers.

19. Defendant Zohar Ziv ("Ziv") is, and at all relevant times was, Chief Operating Officer ("COO") of Deckers. During the Class Period, defendant Ziv sold 6,000 shares of his Deckers stock for proceeds of $662,760.

20. The defendants named above in ¶¶17-19 are referred to herein as the "Individual Defendants."

21. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Deckers' quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

**FRAUDULENT SCHEME AND COURSE OF BUSINESS**

22. Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Deckers. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Deckers common stock was a success, as it: (i) deceived the investing public regarding Deckers' prospects and business; (ii) artificially inflated the price of Deckers common stock; (iii) caused plaintiff and other members of the Class to purchase Deckers common stock at inflated prices; and (iv) permitted defendants Martinez and Ziv to sell 39,005 shares of their Deckers stock at artificially inflated prices for proceeds of over $4.1 million.

**BACKGROUND**

23. Deckers is a designer, producer, marketer, and brand manager of footwear, apparel and accessories. Deckers markets its products under three brands: UGG, Teva and Sanuk. The Company sells its products, including accessories, such as handbags and outerwear, through domestic and international retailers, international distributors, and directly to consumers both domestically and internationally, through its websites, call centers, retail concept stores and retail outlet stores. In addition to the Company's primary brands, Deckers' other brands include TSUBO, a line of casual footwear that incorporates style, function and maximum comfort; Ahnu, a line of outdoor performance and lifestyle footwear; and MOZO, a line of footwear that combines running shoe technology with work shoe toughness for individuals that spend long hours working on their feet.

24. One of the most important inputs of Deckers' manufacturing was sheepskin and its profitability was heavily dependent on the price of sheepskin. By mid-2011, sheepskin prices had increased significantly due to increased demand in countries like China, and flooding in New Zealand which led to the destruction of millions of sheep and affected the price of sheepskin all over the world. Investors

rightly focused on these price increases but defendants assured them that Deckers had instituted programs to mitigate the increasing sheepskin prices.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

25. On October 27, 2011, Deckers issued a press release announcing its financial results for its 2011 third quarter, ended September 30, 2011. The Company reported net sales of $414.4 million, or $1.59 diluted EPS, and a 1.9% increase in gross margin to 49.0%. The Company's UGG brand sales increased 47.3% to $376.7 million. The press release stated in part:

> "The third quarter was an exceptionally strong period of sales and earnings growth for our Company led by the UGG brand," stated Angel Martinez, President, Chief Executive Officer and Chair of the Board of Directors. "We experienced higher domestic wholesale demand for the UGG brand fall line versus a year ago driven by the introduction of several new styles and new collections, including a broader assortment of men's product. At the same time, our international sales more than doubled fueled by the growth in wholesale unit volumes in the United Kingdom and Benelux, coupled with an increase in sales resulting from our conversion to wholesale operations in these regions. Our retail stores, which now total 37 worldwide, performed very well during the third quarter highlighted by a 15.4% same store sales increase. The growth of the spring line earlier this year combined with the solid start to fall has created strong momentum for the UGG brand as we head into the holidays."
>
> Mr. Martinez continued, "Fiscal 2011 is on track to be another record year for Deckers Outdoor Corporation with the UGG brand poised to surpass $1 billion in annual sales. Equally important, we have made strategic investments that have strengthened our global operating

platform and better positioned the company for sustainable long-term growth. These included our acquisition of the Sanuk® brand, our hiring of key personnel to spearhead international expansion, additional marketing and advertising investments, and our planned opening of a total of 17 new company-owned stores in fiscal year 2011. As we look out to next year, we remain optimistic about our growth opportunities despite some of the current headwinds facing the global economy. However, we will experience further increases in raw material prices in 2012."

* * *

Inventories at September 30, 2011 increased 80.9% to $356.9 million compared to $197.3 million at September 30, 2010. By brand, UGG inventory increased $143.7 million to $324.0 million at September 30, 2011, Teva inventory increased $5.7 million to $16.9 million at September 30, 2011, and our other brands' inventory increased $1.0 million to $6.8 million at September 30, 2011. Sanuk brand inventories were $9.2 million at September 30, 2011. The increase in inventory at September 30, 2011 was primarily attributable to the growth in fourth quarter orders for the UGG brand, the warehousing of fourth quarter 2011 inventory supporting the new wholesale United Kingdom and Benelux business that was fulfilled by international distributors last year, the increase in retail stores, and the additional inventory associated with the Sanuk brand.

26. Further, the Company reported its full-year and fourth quarter 2011 outlook. The press release stated in part:

**Full-Year 2011 Outlook**

Based on better than expected third quarter results the Company is raising its full-year outlook as follows:

- The Company now expects its full-year revenue to increase approximately 33% over 2010 levels, compared to previous guidance of approximately 26%. UGG brand sales are expected to increase approximately 32%, compared to previous guidance of 25%. Teva brand sales are expected to increase by approximately 20%, while other brand sales are expected to be down by approximately 10%. The newly acquired Sanuk brand is expected to generate sales in the high $20 million range.
- The Company now expects its full-year diluted earnings per share to increase approximately 22% over 2010, compared to previous guidance of approximately 17%. This guidance assumes a gross profit margin of approximately 50% and SG&A as a percentage of sales of approximately 29%.

27. After releasing its third quarter 2011 financial results, on October 27, 2011, Deckers hosted a conference call with analysts, investors and media representatives, during which defendants represented the following:

[GEORGE:] Prices for our primary raw material, sheepskin, have continued to rise, as have leather prices which often moved in correlation with one another. After increasing 30% in 2011 over 2010 our sheepskin costs will be up another 40% in 2012.

***As we have discussed before, we have implemented programs to help mitigate the impact from higher sheepskin and raw material costs.*** These include selectively raising prices, increasing the mix of non-sheepskin product, exploring new footwear materials, new production

technologies, and US production, and supply chain efficiencies such as reduced freight costs and others.

We think some of these measures, along with the expected growth of our retail division and higher concentration of international sales, will help partially offset the increase in our cost of goods sold in the near term while others will take more time before we see meaningful benefit flow through our P&L.

* * *

[MARTINEZ:] So it's shaping up to be another record year for the Company. The UGG brand is on pace to surpass $1 billion in annual sales. The Teva brand is projected to report its second consecutive year of 20%-plus growth, and our brand portfolio has never been stronger thanks to the acquisition of the Sanuk brand.

* * *

Turning to 2012, spring 2012 pre-book process for the UGG, Teva, and Sanuk brands went well. The UGG brand Spring line is expected to have a much greater presence at our domestic wholesale accounts next year, including sandals, espadrilles, boots, clogs, and sneakers.

* * *

Overseas the UGG brand spring line is still under-penetrated. We believe that our newly established subsidiaries provide a stronger platform to go after this large market opportunity. Likewise, our direct operations in the UK and Benelux are influencing the Teva brand's strategic direction in those regions as well as neighboring countries like France.

* * *

Now we are obviously well aware of the potential headwinds that face the global consumer should the economic environment deteriorate further. However, we feel good about our prospects and our growth prospects at this point. ***The opportunities for our business have never been broader or more diverse, and we are confident that we have the right strategies in place to build on the global momentum that we have created.***

28. These statements were viewed very favorably by the investment community, as reflected in analyst reports. For example, an October 28, 2011 report by Credit Suisse was entitled "Stellar 3Q; 4Q Guidance Remains Conservative; Reiterating Outperform," and stated in part:

- **Raising Estimates and Price Target to $122.** In light of stronger than expected demand and margins, we are raising FY11 revenue and EPS estimates to $1344mn and $5.10, from $1314mn and $4.90. We are also raising our Price Target from $110 to $122, reflecting higher estimates and increasing confidence in long-term growth potential.

29. Following these statements, the price of Deckers common stock rose $11.48 per share, a 10.8% increase, to close at $117.66 per share, the Class Period high, on October 28, 2011.

30. Immediately after these statements, defendant Martinez sold 24,339 shares of his Deckers stock at $112.68 per share, nearly as high as Deckers' all time high stock price, for proceeds of $2.7 million.

31. On February 23, 2012, Deckers issued a press release announcing its financial results for its 2011 full-year and fourth quarter, ended December 31, 2011. The Company reported net sales of $1.377 billion, or $5.07 diluted EPS, and a gross margin of 49.3% for full-year 2011. The Company's UGG brand sales increased 37.6% to $1.202 billion. Additionally, the Company reported net sales of $603.9

million, or $3.18 diluted EPS, and a gross margin of 51.0% for the quarter. For the fourth quarter, UGG brand sales also increased 37.7% to $568.5 million. The press release stated in part:

> "Our fourth quarter results exceeded expectations and were the highest in the history of the Company for sales and profitability," stated Angel Martinez, President, Chief Executive Officer and Chair of the Board of Directors. "UGG brand sales once again grew at a robust pace during the holidays, fueling our record performance and easily pushing annual sales for the UGG brand above $1 billion for the first time. We are very pleased with the UGG brand results, particularly the growing diversity of the sales mix in terms of product collections, distribution channels, and geographies."
>
> "We are coming off a very strong period of growth in 2011 driven by investments in product development, marketing and advertising, and international and retail expansion" continued Martinez. "We believe that each of these areas is critical to successfully developing global lifestyle brands, and we remain committed to these strategies going forward. With the addition of the Sanuk® brand this July, we begin a new year with what we believe to be our strongest brand portfolio ever, with compelling growth prospects across our entire business as evidenced by our outlook for sales growth of 15% in 2012. Our projected top-line expansion, which includes a higher contribution from retail sales and the Sanuk brand, along with selective price increases compared with 2011, is helping offset our second consecutive year of significant cost headwinds mainly related to increases in sheepskin prices. We continue to pursue all available opportunities to further mitigate the impact of cost pressures and based on our initial visibility, we expect to experience relief beginning in 2013."

32. Further, the Company provided outlook for its full-year 2012 and the first quarter of 2012. The press release stated in part:

**Full-Year 2012 Outlook**

- Based upon current visibility, the Company expects full year revenues to increase approximately 15% over 2011 levels.
- The Company expects full year diluted earnings per share to be approximately flat with 2011 levels due primarily to the increase in sheepskin costs in 2012 compared to 2011, which the Company projects to adversely impact profitability by approximately $1.40 per diluted share. This guidance assumes a gross profit margin decline of 200 basis points from 2011 levels due to an increase in costs of goods sold, partially offset by selective price increases, an increased contribution from retail sales, and the addition of the Sanuk brand for the full year. This guidance also assumes SG&A as a percentage of sales of approximately 29%.

* * *

**First Quarter Outlook**

- The Company currently expects first quarter 2012 revenue to increase approximately 19% over 2011, and expects first quarter 2012 diluted earnings per share to be down approximately 50% compared to 2011.
- First quarter guidance includes estimates of approximately $3.5 million, or $0.06 per diluted share, associated with the amortization and accretion expenses related to the Sanuk acquisition.

- This guidance also assumes a gross profit margin of approximately 48% and SG&A as a percentage of sales of approximately 43%.
- In addition, first quarter guidance includes higher levels of fixed overhead for new retail stores, international infrastructure, and other general and administrative costs. As a reminder, a significant amount of our operating expenses are fixed and spread evenly on an absolute dollar basis throughout each quarter. This includes the costs associated with 18 new stores that were opened in 2011.

33. After releasing its fourth quarter and full-year 2011 financial results, on February 23, 2012, Deckers hosted a conference call with analysts, investors and media representatives, during which defendants represented the following:

> [MARTINEZ:] . . . Despite the mildest winter in recent memory, we still grew UGG brand sales 38% in the fourth quarter. We believe this is a testament to the growing popularity of the brand and the strength of the product collections that we've developed. While we're not immune to weather, especially with our small but growing line of cold weather boots, ***we believe that the comfort factor, combined with the new fashion products we provide, positions us better than the majority of our peers***. That said, the fact is, when retailers are sitting on excess inventory of winter apparel and footwear, it impacts everyone including us, as opening buy dollars to the following season are reduced. But as you just heard from Tom, ***we're projecting sales to grow 15% in 2012. Which, again, I believe speaks to the power of the UGG brand and its importance to retailers.***

* * *

[GEORGE:] . . . The higher sheepskin prices are costing us about 500 basis points of gross margin, or roughly $1.40 in earnings per share in 2012. ***However, primarily through selective price increases, the full year addition of Sanuk, and a greater contribution from our retail division, we'll be able to offset about 300 basis point of the gross margin decline. And fully offset the negative impact to our bottom line.***

As we have discussed before, we have also implemented long-term programs to help further mitigate the impact from higher sheepskin and raw material costs. These include increasing the mix of non sheepskin products, new footwear materials and new production technologies, and taking advantage of lower-cost production including the United States where we will begin sourcing product from later this year.

34. On April 26, 2012, Deckers' stock price closed at $69.46 per share.

35. On April 26, 2012, after the market closed, Deckers issued a press release announcing its financial results for its 2012 first quarter, ended March 31, 2012. The Company reported net sales of $246.3 million, or $0.20 diluted EPS, and gross margins of 46.0%. The UGG brand sales increased 6.5% to $158.1 million. The press release stated in part:

"Our first quarter performance was mixed versus our expectations," stated Angel Martinez, President, Chief Executive Officer and Chair of the Board of Directors. "Sales growth was driven by the addition of the Sanuk brand combined with increased demand for the UGG brand spring line, partially offset by softness in boots due to the unusually warm weather. The difference in the channel mix versus projections, along with some higher closeouts for the Teva brand and

non-Classic UGG brand styles, put some additional pressure on overall gross margins on top of the higher product costs we had forecasted."

"We'll soon be completing our fall booking process and we're encouraged by the level of domestic wholesale commitments for the UGG brand collection to date particularly given the mild winter," continued Martinez. "While we believe that the macroeconomic conditions in Europe have created a difficult selling environment, we remain optimistic about our future prospects throughout the continent. Looking ahead, I have confidence that we can continue to successfully navigate through the near-term challenges facing some areas of our business, while continuing to execute against our strategic plan aimed at delivering consistent sales and earnings growth over the long-term."

36. Based on Deckers' negative first quarter results, the Company also updated its full-year 2012 outlook and provided its second quarter 2012 outlook:

**Full-Year 2012 Outlook**

Based on first quarter results combined primarily with lower international wholesale projections, the Company is revising its full year outlook.

- The Company now expects 2012 sales to increase approximately 14% over 2011, compared to previous guidance of approximately 15%.
- ***The Company now expects 2012 diluted earnings per share to decrease approximately 9% to 10% from 2011, compared to previous guidance for diluted earnings per share to be approximately flat year over year.*** This guidance assumes a gross profit margin decline of 250 basis points from 2011 levels compared to previous guidance which assumed a decline of 200 basis points. The year over year decline is due

primarily to an increase in cost of goods sold and a higher level of closeout sales, partially offset by selective prices increases, increased contribution from retail sales, and the addition of the Sanuk brand for the full year. This guidance also assumes SG&A as a percentage of sales of approximately 30% versus prior guidance of approximately 29% due to the lower sales projections.

- Fiscal 2012 guidance assumes approximately $13 million, or $0.23 per diluted share, associated with the amortization and accretion expenses related to the Sanuk acquisition.
- Fiscal 2012 guidance assumes the Company's effective tax rate will be approximately 31% which is in line with prior guidance.

**Second Quarter Outlook**

- The Company currently expects second quarter 2012 revenue to increase approximately 8% over 2011.
- The Company currently expects to report a second quarter 2012 diluted loss per share of approximately $(0.60) compared to the diluted loss per share of $(0.19) reported in the second quarter of 2011.
- Second quarter guidance includes estimates of approximately $3.5 million, or $0.06 per diluted share, associated with the amortization and accretion expenses related to the Sanuk acquisition.
- This guidance also assumes a gross profit margin of approximately 43% and SG&A as a percentage of sales of approximately 37% resulting from higher levels of fixed overhead for new retail stores, international infrastructure, and

> other general and administrative costs. As a reminder, a significant amount of our operating expenses are fixed and spread evenly on an absolute dollar basis throughout each quarter. This includes the costs associated with 17 new stores that were opened in 2011.

37. As a result of this news, the price of Deckers common stock plummeted $17.63 per share to close at $51.83 per share on April 27, 2012, a one-day decline of more than 25% on high volume.

38. The true facts, which were known by defendants but concealed from the investing public during the Class Period, were as follows:

(a) the Company was not able to mitigate the effects of dramatically increasing prices for sheepskin;

(b) the Company was seeing a decline in demand to a much larger extent than represented due to the unusually warm weather;

(c) the Company's extensive expansion resulted in the over-supply of UGG products, especially its classic products, meeting and/or exceeding demand, which meant that the Company's price increases for those products were ineffective;

(d) the Company's inventory levels for its UGG brand were increasing rapidly, which led to the increased use of mark-downs and close-outs as the Company experienced declining same store sales and its new retail stores also suffered;

(e) as a result of the foregoing, the Company's gross margin was negatively impacted; and

(f) based on the above, defendants lacked a reasonable basis for their positive statements about the Company or its revenue outlook.

39. As a result of defendants' false statements and omissions, Deckers common stock traded at artificially inflated prices during the Class Period. After the above revelations were revealed to the market, however, the Company's shares were

hammered by massive sales, sending them down approximately 56% from their Class Period high.

## ADDITIONAL SCIENTER ALLEGATIONS

40. As alleged herein, defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading, knew that such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Deckers, their control over, and/or receipt and/or modification of allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Deckers, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION/ECONOMIC LOSS

41. During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Deckers common stock and operated as a fraud or deceit on Class Period purchasers of Deckers common stock by failing to disclose and misrepresenting the adverse facts detailed herein. When defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Deckers common stock fell precipitously as the prior artificial inflation came out the stock price. As a result of their purchases of Deckers common stock during the Class Period, plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws when the truth about Deckers was revealed through the February 23, 2012 and April 26, 2012 disclosures that removed the artificial inflation from the price of Deckers common stock.

42. By failing to disclose to investors the adverse facts detailed herein, defendants presented a misleading picture of Deckers' business and prospects. Defendants' false and misleading statements had the intended effect and caused Deckers common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $117.66 per share on October 28, 2011.

43. As a direct result of the disclosures on February 23, 2012 and April 26, 2012, the price of Deckers common stock fell precipitously. These drops removed the artificial inflation from the price of Deckers common stock, causing real economic loss to investors who had purchased Deckers common stock at artificially inflated prices during the Class Period.

44. These declines were a direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the price declines in Deckers common stock negate any inference that the loss suffered by plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by plaintiff and the other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the price of Deckers common stock and the subsequent significant decline in the value of Deckers common stock when defendants' prior misrepresentations and other fraudulent conduct were revealed.

**APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE**

45. At all relevant times, the market for Deckers common stock was an efficient market for the following reasons, among others:

(a) Deckers common stock met the requirements for listing and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) as a regulated issuer, Deckers filed periodic public reports with the SEC and the NASDAQ;

(c) Deckers regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Deckers was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

46. As a result of the foregoing, the market for Deckers common stock promptly digested current information regarding Deckers from all publicly available sources and reflected such information in the price of the stock. Under these circumstances, all purchasers of Deckers common stock during the Class Period suffered similar injury through their purchase of Deckers common stock at artificially inflated prices, and a presumption of reliance applies.

## NO SAFE HARBOR

47. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was

authorized and/or approved by an executive officer of Deckers who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Deckers common stock during the Class Period (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

49. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Deckers has more than 38 million shares of stock outstanding, owned by hundreds, if not thousands, of persons.

50. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a) whether defendants violated the 1934 Act;

(b) whether defendants omitted and/or misrepresented material facts;

(c) whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e) whether the price of Deckers common stock was artificially inflated; and

(f) the extent of damage sustained by Class members and the appropriate measure of damages.

51. Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

52. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

53. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5 Against All Defendants

54. Plaintiff incorporates ¶¶1-53 by reference.

55. During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

56. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a) employed devices, schemes, and artifices to defraud;

(b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Deckers common stock during the Class Period.

57. By virtue of the foregoing, Deckers and the Individual Defendants have each violated §10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder.

58. As a direct and proximate result of defendants' wrongful conduct, plaintiff and the Class have suffered damages in connection with their respective purchases and sales of Deckers common stock during the Class Period, because, in reliance on the integrity of the market, they paid artificially inflated prices for Deckers common stock and experienced losses when the artificial inflation was released from Deckers common stock as a result of the partial revelations and stock price decline detailed herein. Plaintiff and the Class would not have purchased Deckers common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

### For Violation of §20(a) of the 1934 Act Against All Defendants

59. Plaintiff incorporates ¶¶1-58 by reference.

60. The Individual Defendants acted as controlling persons of Deckers within the meaning of §20(a) of the 1934 Act. By reason of their controlling positions with the Company, the Individual Defendants had the power and authority to cause Deckers to engage in the wrongful conduct complained of herein. Deckers controlled the Individual Defendants and all of its employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A. Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B. Awarding plaintiff and the members of the Class damages, including interest;

C. Awarding plaintiff reasonable costs and attorneys' fees; and

D. Awarding such equitable, injunctive, or other relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: May 31, 2012

ROBBINS GELLER RUDMAN
& DOWD LLP
DARREN J. ROBBINS
DAVID C. WALTON

[signature]
DAVID C. WALTON

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

CHAPIN FITZGERALD SULLIVAN
& BOTTINI LLP
FRANCIS A. BOTTINI
550 West C Street, Suite 2000
San Diego, CA 92101
Telephone: 619/241-4810
619/955-5318 (fax)

Attorneys for Plaintiff

S:\CptDraft\Securities\Cpt Deckers Outdoor.doc

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

ERICH BRACHT ("Plaintiff") declares:

1. Plaintiff has reviewed a complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 2/24/2012 | 133 shares | $77.50 |
| | | |
| | | |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| | | |
| | | |
| | | |

5. Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

6. The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30 day of May, 2012.

ERICH BRACHT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Manuel Real and the assigned discovery Magistrate Judge is Carla Woehrle.

The case number on all documents filed with the Court should read as follows:

**CV12- 4768 R (CWx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

Unless otherwise ordered, the United States District Judge assigned to this case will hear and determine all discovery related motions.

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (If a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[ ] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICH BRACHT, Individually and on Behalf of All Others Similarly Situated,<br>PLAINTIFF(S)<br>v.<br>DECKERS OUTDOOR CORPORATION, ANGEL R. MARTINEZ, THOMAS A. GEORGE and ZOHAR ZIV,<br>DEFENDANT(S). | CASE NUMBER<br>CV12-04768 R(CWx)<br><br>SUMMONS<br>BY FAX |

TO: DEFENDANT(S):

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ ______ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, David C. Walton, whose address is Robbins Geller Rudman & Dowd, 655 W. Broadway, Ste. 1900, San Diego, CA 92101. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: MAY 31 2012

By: JULIE PRADO
Deputy Clerk

SEAL

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

I (a) PLAINTIFFS (Check box if you are representing yourself ☐)
ERICH BRACHT, Individually and on Behalf of All Others Similarly Situated

Colorado

DEFENDANTS
DECKERS OUTDOOR CORPORATION, ANGEL R. MARTINEZ, THOMAS A. GEORGE and ZOHAR ZIV

(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
David C. Walton (167268)
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900, San Diego, CA 92101 619/231-1058

Attorneys (If Known)

II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

IV. ORIGIN (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

V. REQUESTED IN COMPLAINT: JURY DEMAND: ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

CLASS ACTION under F.R.C.P. 23: ☑ Yes ☐ No ☐ MONEY DEMANDED IN COMPLAINT: $________

VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS -- 15 U.S.C. §§78j(b) and 78t(a)

VII. NATURE OF SUIT (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS | TORTS | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☑ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Act<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Info. Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise<br>REAL PROPERTY<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | PERSONAL INJURY<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Fed. Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury-Med Malpractice<br>☐ 365 Personal Injury-Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>IMMIGRATION<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus-Alien Detainee<br>☐ 465 Other Immigration Actions | PERSONAL PROPERTY<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability<br>BANKRUPTCY<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>CIVIL RIGHTS<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 445 American with Disabilities - Employment<br>☐ 446 American with Disabilities - Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence Habeas Corpus<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus/ Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>FORFEITURE/ PENALTY<br>☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety /Health<br>☐ 690 Other | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act<br>PROPERTY RIGHTS<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>SOCIAL SECURITY<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>FEDERAL TAX SUITS<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS-Third Party 26 USC 7609 |

FOR OFFICE USE ONLY: Case Number: CV12-04768

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s):

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Colorado |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Santa Barbara County | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Santa Barbara County | |

*** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): [signature] **Date** May 31, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |